UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| In the Matter of | : | Chapter 13 |
| | : | |
| BENNIE LEE WILLIAMS and | : | |
| WANDA LAVERNE WILLIAMS, | : | |
| | : | |
| Debtors | : | Case No. 07-52478 RFH |
| | : | |
| BENNIE LEE WILLIAMS and | : | |
| WANDA LAVERNE WILLIAMS, | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | |
| | : | |
| SUNTRUST BANK, | : | |
| | : | Adversary Proceeding |
| Defendant | : | No. 08-5026 |

BEFORE

ROBERT F. HERSHNER, JR.
UNITED STATES BANKRUPTCY JUDGE

COUNSEL:

Plaintiffs:                          Wayne Gilleland
                                     P.O. Box 104
                                     Macon, Georgia 31202

Defendant:                           Walter E. Jones
                                     Stephen Louis A. Dillard
                                     P.O. Box 4283
                                     Macon, Georgia 31208-4283

Chapter 13 Trustee:                  Tony Coy
                                     Laura D. Wilson
                                     P.O. Box 954
                                     Macon, Georgia 31202

## MEMORANDUM OPINION

Bennie Lee Williams and Wanda Laverne Williams, Plaintiffs, filed with the Court on March 11, 2008, their Complaint To Set Aside Foreclosure Sale. SunTrust Bank, Defendant, filed a response on April 10, 2008. Plaintiffs' complaint came on for trial on May 28, 2008. The Court, having considered the Stipulated Facts,[1] the evidence presented, and the arguments of counsel, now publishes this memorandum opinion.[2]

### FINDINGS OF FACT

Wanda Laverne Williams[3] purchased a residence in August 1997.[4] Defendant financed the purchase.[5] Ms. Williams executed a promissory note dated August 8, 1997, in favor of Defendant. Ms. Williams was to repay the principal, $39,100, plus interest by making monthly payments of $286.90 over a term of thirty years. Ms. Williams executed a deed to secure debt dated August 8, 1997, pledging

---

[1] The stipulation was filed on May 27, 2008. Docket No. 8.

[2] SunTrust Bank filed with the Court on December 19, 2007, a motion for relief from the automatic stay. The motion was filed in the Williamsons's "main" bankruptcy case as Docket No. 21. SunTrust Bank's motion has been "carried along with" this adversary proceeding.

[3] Ms. Williams was known as Wanda L. Hill in August 1997.

[4] The residence is located at 2333 Millerfield Road, Macon, Georgia.

[5] Defendant was known as SunTrust Bank, Middle Georgia, N.A. in August 1997.

her residence as security for her obligation.  The deed to secure debt was filed for record in the public deed records of Bibb County, Georgia.

Ms. Williams failed to make her monthly payments to Defendant.  The law firm of Morris Schneider & Prior, LLC[6] represents Defendant in foreclosure proceedings.  MR Default Services[7] handles certain nonlegal preforeclosure and postforeclosure functions for Morris Schneider & Prior.  MR Default Services sent Ms. Williams a Fair Debt Collection Practices Act Notice dated August 13, 2007, and a Notice Of Foreclosure Sale dated August 15, 2007.[8]

In preparation for the anticipated foreclosure on Ms. Williams's residence, MR Default Services prepared and sent to Defendant a Deed Under Power[9] that was postdated[10] with a date of October 2, 2007.  Defendant's representatives executed, notarized, and witnessed the Deed Under Power sometime between August 15 and August 24, 2007.  Defendant's representatives, notary, and witness were in close proximity to each other but may not have actually seen each other sign the Deed

---

[6] Morris Schneider & Prior, LLC is now known as Morris, Schneider, Prior, Johnson & Freeman, LLC.

[7] MR Default Services is now known as Prommis Solutions.

[8] The notices are signed "MR Default Services on behalf of Morris, Schneider & Prior, L.L.C."

[9] A Deed Under Power is also known as a foreclosure deed.

[10] Postdate mean "To put a date on (an instrument, such as a check) that is later than the actual date."  Black's Law Dictionary 1204 (8th ed. 2004).

3

Under Power.[11]  Defendant returned the executed Deed Under Power to MR Default Services on August 24, 2007.  Legal notice of the pending foreclosure was advertised in Bibb County's "official newspaper"[12] during September 2007.  On October 2, 2007, MR Default Services conducted the nonjudicial foreclosure.  Defendant, by and through MR Default Services, made the highest bid of $38,116.93.  MR Default Services notified Defendant of the results of the foreclosure at 5:21 PM on October 2, 2007.

Ms. Williams and her husband filed on October 11, 2007, a petition under Chapter 13 of the Bankruptcy Code.  Defendant filed the Deed Under Power in the public deed records of Bibb County on October 22, 2007. The Court entered an order on December 31, 2007, confirming the Williams's Chapter 13 plan.  Defendant filed a proof of claim which is dated February 27, 2008, in the Williams's bankruptcy case.  Defendant withdrew its proof of claim on February 29, 2008.  The Williams continue to reside in the residence.

At the trial of this adversary proceeding, Ms. Williams testified that, in her opinion, the current value of her residence is between $55,500 and $60,000.  The Macon/Bibb County Tax Assessors's records show the value of Ms. Williams's

---

[11] In the absence of fraud, a latently defective attestation will not destroy the constructive notice of an otherwise properly recorded deed. Leeds Building Products, Inc. v. Sears Mortgage Corp., 267 Ga. 300, 477 S.E. 2d 565 (1996).

[12] O.C.G.A. §9-13-142 (a)(2006).

4

residence as $52,400 for Tax Year 2008. The Court is persuaded that the current value of Ms. William's residence is $55,500. Defendant's foreclosure bid was $38,116.93. The Court is persuaded that the value of Ms. Williams's residence exceeds the amount of Defendant's foreclosure bid.

In this adversary proceeding, the Williams seek to set aside the foreclosure on Ms. Williams's residence. The Williams want to deal with the obligation owed to Defendant through their confirmed Chapter 13 plan. The Williams want to remain in possession of Ms. Williams's residence.

Defendant contends that Ms. Williams's interest in the residence was terminated before the Williams filed for bankruptcy relief. Defendant seeks relief from the automatic stay of the Bankruptcy Code to dispossess the Williams as tenants at sufferance.[13]

## CONCLUSIONS OF LAW

In Howard v. Citizens Bank of Cochran (In re Howard)[14] this Court stated:

> "Under Georgia law, a deed to secure debt transfers legal title to the property conveyed to the grantee and the grantor retains equitable title with the equitable right of redemption by payment of the debt. Redemption can be accomplished only by payment in full of the secured debt. This equitable right of redemption is a property right of

---

[13] Cloud v. Georgia Central Credit Union, 214 Ga. App. 594, 448 S.E. 2d 913, 916 (1994) (after a foreclosure sale, the former owners are tenants at sufferance subject to being dispossessed).

[14] 351 B.R. 251 (Bankr. M.D. Ga. 2006) (Hershner, J.).

5

> the debtor within the jurisdiction of the bankruptcy court. . . . In Georgia, a properly conducted foreclosure cuts off the grantor's equitable right of redemption." *Leggett v. Morgan, (In re Morgan)*, 115 B.R. 399, 401 (Bankr. M.D. Ga. 1990).
>
> Federal law determines whether an interest in property is property of the bankruptcy estate. The nature and existence of the interest is determined by state law. *Witko v. Menotte, (In re Witko)*, 374 F.3d 1040, 1043 (11th Cir. 2004). A debtor's equitable right of redemption is property of the bankruptcy estate. *Commercial Federal Mortgage Corp. v. Smith, (In re Smith)*, 85 F.3d 1555, 1557-58 (11th Cir. 1996). Whether a debtor's equitable right of redemption is terminated by a foreclosure sale is a question of state law.
>
> Neither Plaintiff, the Bank, nor Mr. Davis has cited a controlling appellate state court or federal court decision identifying the specific event in a foreclosure proceeding that terminates a debtor's equity of redemption.

351 B.R. at 255.

Section 1322 (c)(1) of the Bankruptcy Code provides:

> **§ 1322.  Contents of plan**
>
> . . .
>
> **(c)**  Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
>
> > **(1)**  a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law;

6

11 U.S.C.A. § 1322 (c)(1) (West 2004).

Collier on Bankruptcy states:

> Section 1322(c)(1) provides that a default on a mortgage on the debtor's principal residence may be cured until the residence is "sold at [a] foreclosure sale" that is conducted in accordance with applicable nonbankruptcy law. The legislative history states that the debtor may cure a home mortgage default "at least through completion of a foreclosure sale under applicable nonbankruptcy law."
>
> The statutory language and legislative history thus leave to state law the question of when a foreclosure sale has been completed. In some states, a sale may not be deemed completed until the court has entered an order confirming the sale, or until a sheriff has conveyed the property, or until a debtor no longer may redeem the property. It may well be significant that Congress did not say that the debtor may cure "until the sale" or "until the date of the foreclosure sale," indicating that the completion of the sale might be on a later date than the date of the auction.

8 Collier on Bankruptcy ¶ 1322.15 (15th ed. rev. 2008).

Under Georgia law, a valid foreclosure divests all of the debtor's rights and title in the property. Rhodes v. Anchor Rode Condominium Homeowner's Assoc., Inc., 270 Ga. 139, 508 S.E. 2d 648, 650 (1998); Carrington v. Citizens' Bank of Waynesboro, 144 Ga. 52, 85 S.E. 1027 (1915).

The Williams and Defendant disagree on the specific event in the foreclosure process that terminates a debtor's rights and title in the property. The debtor's rights and title are known as the debtor's equity of redemption.

The Williams rely upon Federal Deposit Insurance Corp. v. Dye,[15] a decision by the former Fifth Circuit Court of Appeals. The FDIC foreclosed on property pledged as security for several promissory notes. The FDIC was the highest bidder. No foreclosure deeds were executed nor did the FDIC make any payment pursuant to its bid at the foreclosure sales. The FDIC then sued Dye for the outstanding balances on the underlying promissory notes as though there had been no foreclosure sales. On appeal, Dye and the FDIC agreed that if the foreclosure sales were valid, then the FDIC was precluded from suing on the underlying promissory notes. The former Fifth Circuit held that the FDIC could sue Dye for the outstanding balance on the promissory notes. The former Fifth Circuit stated:

> We are persuaded that FDIC's argument, however, that even if the [foreclosure] sales were not void, they were never consummated: no deed was transferred and no consideration passed. Georgia law treats the high bid at a foreclosure sale as forming a contract: the bidder contracts with the debtor to purchase the property at the bid price. *See Moody v. Mendenhall*, 238 Ga. 689, 234 S.E. 2d 905 (1977) (suit by debtor to enforce specific performance by bidder). Until the deed is transferred the sale itself has not occurred; there is only a contract to buy and sell.
>
> . . .
>
> By analogy, we conclude that to constitute a foreclosure sale which would preclude a judgment for the full amount of the note, the proceeds of the sale must have been

---

[15] 642 F.2d 837 (5th Cir. Unit B, April 17, 1981). This Court is bound by all decisions handed down by the former Fifth Circuit Court of Appeals prior to October 1, 1981. Bonner v. City of Prichard, Alabama, 661 F.2d 1206, 1209 (11th Cir. 1981).

> transferred from the bidder to the creditor. The next question is whether this transfer occurred in the case before us. Where the bidder and creditor are the same entity, there must be an objective standard to determine when or if the transfer has occurred. The parties direct us to no such standard. However, where the deeds have not been delivered nor have the notes been marked paid in full, it is clear that the proceeds of sale have not been transferred in the cases before us. Thus, there were no valid foreclosure sales to prevent FDIC from suing for the previously outstanding balance of the notes.

642 F.2d at 843.

In <u>Dye</u>, the former Fifth Circuit held that when the highest bidder and the foreclosing creditor are the same entity, that there must be an objective standard to determine whether the proceeds of the foreclosure sale have been transferred. Under the facts in <u>Dye</u>, the former Fifth Circuit held that the proceeds of sale had not been transferred and that there were no valid foreclosure sales to prevent the FDIC from suing Dye for the outstanding balances on the underlying promissory notes.

In <u>Dye</u>, "The Fifth Circuit did not address the issue presented herein: when is the debtor's right of redemption extinguished." <u>Sanders v. Amsouth Mortgage Corp. (In re Sanders)</u>, 108 B.R. 847, 849 n.3 (Bankr. S.D. Ga. 1989) (Davis, J.).

In the case at bar, Defendant executed a postdated Deed Under Power in preparation for the anticipated foreclosure on Ms. Williams's residence. The Williams question the effect of a postdated Deed Under Power.

"A deed is good although it mentions no date, or a false date, provided the real

9

date of delivery can be proven." . . . "Merely dating a deed to show a time subsequent to actual delivery would constitute an ambiguity subject to explanation by parol evidence, but would not invalidate the deed." 2 Pindar's Georgia Real Estate Law And Procedure, §§ 19-30,-31 (6th. ed. 2004). See Carr v. Georgia Loan & Trust Co., 108 Ga. 757, 33 S.E. 190 (1899) (deed that bears false date of execution and registry is admissible in evidence if grantor of the deed proves that he executed it while in his possession, though at a different time from its date and also shows its true date of record); 26A C.J.S. Deeds § 38 (2001) ("The validity of a conveyance is not affected by the absence of a date or by a false or impossible date.").

The Court is persuaded that, prior to the Williams's filing for bankruptcy relief, Defendant had executed the Deed under Power. There is no evidence that Defendant made any payment on its bid at the foreclosure sale.

Defendant contends that under Georgia law, Ms. Williams's equity of redemption was terminated when Defendant made the highest bid at the foreclosure sale. Defendant relies upon several Georgia appellant court decisions.

"A sale under the powers contained in a deed to secure debt divests the grantor of all title, and right of equity of redemption, to the lands described in the deed." Cummings v. Johnson, 218 Ga. 559, 129 S.E. 2d 762, 763 (1963).

"As a sale to the highest bidder constituted a complete sale, the plaintiff [the debtor] had no right to redeem it thereafter by contending it was merely a contingent

10

sale and not a cash sale in which event plaintiff might pay off the indebtedness prior to execution of the deed." Heard v. Decatur Federal Savings and Loan Assoc., 157 Ga. App. 130, 276 S.E. 2d 253, 257 (1980).

"The purchaser at a foreclosure sale under a power of sale in a security deed is the sole owner of the property until and unless the sale is set aside." . . . "[The debtor] became a tenant at sufferance of [the purchaser] by the terms of the security deed and operation of law when [the purchaser] bid in the property at the foreclosure sale. [The debtor] became a tenant at sufferance even though there was no [foreclosure] deed conveying the property to [the purchaser] as [the purchaser] had sufficient title by being the grantee in the security deed and the purchaser at the foreclosure sale, which gave [the purchaser] the right to bring dispossessory proceedings under Code Ann. § 61-301 et seq [now § 44-7-50]." McKinney v. South Boston Savings Bank, 156 Ga. App. 114, 274 S.E. 2d 34, 35-36 (1980).

"A sale under power in a security deed divests the title of the grantor, and he has no legal right several days thereafter, on tender of the amount of the debt secured by the deed to the grantee; who is the purchaser at the sale, to demand a conveyance of the land or a cancellation of the security deed. Where a sale of land is made under a power contained in a security deed, and by permission of the grantor contained in the deed the grantee purchases the land at such sale, the grantor cannot defeat the purchaser's right to have the sale fully consummated, by tender of the amount of his

11

indebtedness to the grantee before the actual execution of the deed pursuant to the terms of the sale." Carrington v. Citizens' Bank of Waynesboro, 144 Ga. 52, 85 S.E. 1027, 1028 (1915).

The Bankruptcy Courts for the Northern District of Georgia and the Southern District of Georgia have held that a debtor's equity of redemption terminates upon sale to the highest bidder on the date the foreclosure is held even though the foreclosure deed is not recorded until after the debtor filed for bankruptcy relief. First Nationwide Mortgage Corp. v. Davis (In re Davis), 1998 WL 34066146 (Bankr. S.D. Ga., Jan. 21, 1998) (Dalis, J.); Sanders v. Amsouth Mortgage Co. (In re Sanders), 108 B.R. 847, 849 (Bankr. S.D. Ga., 1989) (Davis, J. ); Pearson v. Fleet Finance Center, Inc. (In re Pearson), 75 B.R. 254, 255 (Bankr. N.D. Ga., 1985) (Drake, J.).

The Court is persuaded that the bankruptcy courts decisions in Davis, Sanders, and Pearson are correct applications of Georgia foreclosure law. In the Court's view, the debtor's equity of redemption is terminated when the high bid is made at a foreclosure sale. The high bid is an appropriate and an objective standard under state law for determining when the foreclosure is final.

Turning to the case at bar, the Court is persuaded that Ms. Williams's rights, title and equity of redemption were terminated when Defendant made the highest bid on October 2, 2007. The Court is persuaded that Ms. Williams had no interest in her former residence when she and her husband filed for bankruptcy relief.

12

The Court is persuaded that it should grant Defendant's motion for relief from the automatic stay to proceed with its remedies under state law.

An order in accordance with this memorandum opinion will be entered this date.

DATED this 4th day of September 2008.

>/s/ Robert F. Hershner, Jr.
>ROBERT F. HERSHNER, JR.
>United States Bankruptcy Judge